RANDY WESTBROOK, PLAINTIFF v. ANDREW COBB, JR., DEFENDANT

No. 918SC174

(Filed 7 January 1992)

1. **Negligence § 10.2 (NCI3d)— automobile accident—injury to plaintiff's back—injury not foreseeable**

The chain of events resulting in plaintiff's injury was not reasonably foreseeable and within the contemplation of an ordinarily prudent individual, since defendant could not reasonably expect that as a result of his vehicle striking a utility pole with a transformer attached, with wires extending to the house across the street, that such wires would be pulled causing sparks which would then ignite a fire in the house; furthermore, a defendant could not reasonably expect that as a result of this house fire a resident of said house would arrive on the scene from a different location, would voluntarily proceed to enter the house while water was still being applied to it, and would injure his back in the process of retrieving personal property. Rather, plaintiff's intentional and purposeful entry into the house interrupted the causal chain of events between defendant's act and plaintiff's injury so that the occurrence was not one which naturally flowed from defendant's negligence.

**Am Jur 2d, Negligence §§ 491, 492, 496, 497, 591, 592, 595, 620, 621, 625.**

WESTBROOK v. COBB

[105 N.C. App. 64 (1992)]

2. **Negligence § 17 (NCI3d)— house fire—entry to retrieve possessions—rescue doctrine inapplicable**

The rescue doctrine was not applicable in this case where plaintiff voluntarily and purposefully chose to leave a place of safety for the purpose of entering his house to extricate belongings after a fire had been extinguished but while water was still being administered.

**Am Jur 2d, Fires § 44; Negligence §§ 689, 701-703.**

**Liability of one negligently causing fire for personal injuries sustained in attempt to control fire or to save life or property. 42 ALR2d 494.**

APPEAL by plaintiff from judgment entered 1 November 1990 by *Judge Robert H. Hobgood* in LENOIR County Superior Court. Heard in the Court of Appeals 13 November 1991.

On the morning of 28 January 1985, defendant was driving an automobile in an easterly direction along R.P. 1757 near Grifton when he struck a utility pole across from the Westbrook house. Trooper J. R. Letchworth was called to investigate the accident. When he arrived he found defendant's car against a utility pole, which was partially broken and pushed over. A transformer was attached to the utility pole and wires ran across the road from it to service plaintiff's house. The utility pole was located off the paved portion of the highway.

At the time of the accident, Donald Johnson, Chief of the Grifton County Fire Department, lived down the road across an open field from plaintiff's house. His mother told him of the accident and approximately ten to fifteen minutes later he arrived at the scene. He was standing against defendant's car when he turned to discover the Westbrook home on fire. After ascertaining the house was empty, Johnson drove into Grifton to set off the fire alarm. Johnson got the fire truck, returned to the scene and began fighting the fire. During this time, plaintiff was at some stables approximately one and one-half miles from his home but his brother had alerted him to the fire. Almost simultaneously with the arrival of the fire truck, plaintiff arrived with his brother.

Plaintiff assisted in bringing the fire under control. With the fire seemingly under control, but water still being applied to the house, plaintiff and his brother entered the house to retrieve a

WESTBROOK v. COBB

[105 N.C. App. 64 (1992)]

metal box with titles, deeds and birth certificates. While inside, plaintiff and his brother decided to attempt to retrieve additional items. Plaintiff was in the process of getting some clothes off a rack when he apparently injured himself. He believed the injury to be only a pulled muscle but when the condition did not improve, plaintiff's doctor referred him to an orthopaedic surgeon who eventually performed surgery on plaintiff's back for an acutely herniated disc.

After the fire was extinguished, Mr. Johnson conducted an investigation of the fire, during which time he discovered a gas line underneath the kitchen with an electric line across it. Evidence at trial tended to establish the blow to the utility pole and transformer caused a surge of electricity to run through the wires into the house. The electrical wires sparked, thereby igniting the gas line next to it and causing a blowtorch effect on the kitchen floor. While the evidence was conflicting as to the precise cause of the fire, all of the experts agreed that the fire was related in some way to the impact to the utility pole.

This case was tried before a jury. At the close of plaintiff's evidence, defendant moved for a directed verdict pursuant to Rule 50(a), N.C. Rules of Civil Procedure, which was granted. Plaintiff thereby appeals that judgment.

*Duffus & Coleman, by Curtis C. Coleman, III, for plaintiff appellant.*

*Wallace, Morris, Barwick & Rochelle, P.A., by Thomas H. Morris, Martha B. Beam, and Elizabeth H. McCullough, for defendant appellee.*

WALKER, Judge.

[1] Plaintiff sets forth five assignments of error in his brief. Of these we need only to consider the first assignment, which is whether the trial court erred in entering a directed verdict at the close of plaintiff's evidence in favor of the defendant on the grounds plaintiff did not establish the requisite elements of a negligence action. Specifically, we find plaintiff failed to prove the essential element of proximate cause, and the trial court did not err in directing a verdict for defendant.

A directed verdict should be granted only in those situations where the evidence, construed in the light most favorable to plain-

## WESTBROOK v. COBB

[105 N.C. App. 64 (1992)]

tiff, is insufficient to support a verdict for the plaintiff. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974). With regard to negligence actions, in *Oliver v. Royall*, 36 N.C.App. 239, 242, 243 S.E.2d 436, 439 (1978), this Court held:

> [P]laintiff, to overcome a motion for a directed verdict, is required to offer evidence sufficient to establish, beyond mere speculation or conjecture, every essential element of negligence. Upon his failure to do so, a motion for a directed verdict is properly granted. (citations omitted).

In order to sustain a claim of actionable negligence, plaintiff must prove (1) defendant owed a duty to plaintiff, (2) defendant failed to exercise proper care in the performance of that duty, and (3) the breach of that duty was the proximate cause of plaintiff's injury, which a person of ordinary prudence should have foreseen as probable under the conditions as they existed. *Pittman v. Frost*, 261 N.C. 349, 134 S.E.2d 687 (1964); *Burr v. Everhart*, 246 N.C. 327, 98 S.E.2d 327 (1957). Since the absence of any one of these elements will defeat a negligence action, we need only address the question of proximate cause. The North Carolina Supreme Court has stated:

> Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed. Foreseeability is thus a requisite of proximate cause, which is, in turn, a requisite for actionable negligence. (citations omitted).

*Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). The test of foreseeability as an element of proximate cause does not require that defendant should have been able to foresee the injury in the precise form in which it occurred. Thus, where the defendant could have reasonably foreseen the consequences of his actions and his actions produced a result in continuous sequence, without which the injury would not have occurred, the defendant's actions will be deemed to have proximately caused the plaintiff's injury. *Nance v. Parks*, 266 N.C. 206, 146 S.E.2d 24 (1966).

WESTBROOK v. COBB

[105 N.C. App. 64 (1992)]

A steadfast definition of "reasonable foreseeability" has not yet been promulgated, leaving the courts to analyze the facts and ascertain whether an ordinarily prudent man could have foreseen his actions would lead to this result.

> It is not required that the defendant foresee the precise injury, the particular consequences it produces, nor the exact manner in which it occurs. All that is required is that defendant "in the exercise of the reasonable care of an ordinarily prudent person, should have foreseen that some injury would result from [his] negligence, or that consequences of a generally injurious nature should have been expected . . . ." (citations omitted).

*Partin v. Carolina Power and Light Company*, 40 N.C.App. 630, 633, 253 S.E.2d 605, 609, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979). Foreseeability is not construed, however, to require the defendant to anticipate events which are merely possible. *Bolkhir v. N. C. State University*, 321 N.C. 706, 365 S.E.2d 898 (1988).

Here, we do not believe the chain of events resulting in plaintiff's injury to be reasonably foreseeable and within the contemplation of an ordinarily prudent individual. A defendant could not reasonably expect that as a result of his vehicle striking a utility pole with a transformer attached, with wires extending to the house across the street, that such wires would be pulled causing sparks which would then ignite a fire in the house. A defendant could not further reasonably expect that as a result of this house fire a resident of said house would arrive on the scene from a different location, would voluntarily proceed to enter the house while water was still being applied to it, and injure his back in the process of retrieving personal property. Although we are not prepared to promulgate a bright line test for the doctrine of foreseeability and application thereof, we are also not prepared to extend the concept to encompass the facts in this case.

Plaintiff argues it need not be shown that defendant could foresee what would happen, nor is it relevant that the eventual consequences, the fire and rescue, were improbable. Rather, all plaintiff needs to show is that defendant set in motion a chain of circumstances that led ultimately to plaintiff's injury. As the Supreme Court has noted, however, proximate cause is to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. "[I]t is 'inconceivable

WESTBROOK v. COBB

[105 N.C. App. 64 (1992)]

that any defendant should be held liable to infinity for all the consequences which flow from his act,' some boundary must be set." *Sutton v. Duke*, 277 N.C. 94, 108, 176 S.E.2d 161, 169 (1970), *citing* Prosser, Law of Torts Sec. 50 (3d Ed. 1964) at p. 303. Consequently, we cannot find plaintiff's injury to have been the natural result of a continuous sequence of actions set into motion by defendant's initial act of striking the utility pole. In this case, plaintiff's intentional and purposeful entry into the house interrupted the causal chain of events between defendant's act and plaintiff's injury, so that the occurrence was not one which naturally flowed from defendant's negligence.

[2] Plaintiff also argues that his injury while attempting to rescue property falls within the realm of the "rescue doctrine." The rescue doctrine requires a tortfeasor to anticipate the possibility "some bystander will yield to the meritorious impulse to save life or even property from destruction, and attempt a rescue." *Britt v. Mangum*, 261 N.C. 250, 254, 134 S.E.2d 235, 238 (1964). Thus, where applicable, the doctrine stretches the foreseeability limitation to help bridge the proximate cause gap between defendant's act and plaintiff's injury. *Partin v. Carolina Power and Light Co.* at 634, 253 S.E.2d at 610. The question, then, is whether the rescue doctrine applies under these facts.

In *McNair v. Boyette*, 282 N.C. 230, 192 S.E.2d 457 (1972), the Court held the rescue doctrine did not apply where evidence indicated plaintiff came upon the scene of an automobile accident, investigated and found no one injured or in need of rescue. He then crossed the highway to get a flashlight for the purpose of directing traffic. When he stepped onto the highway he was hit by defendant's car. In holding the rescue doctrine to be inapplicable, the Court noted the plaintiff had reached, but then intentionally left, a place of safety. Under these facts, the Court concluded the defendant's negligence was not a proximate cause of plaintiff's injuries.

In this case, we too must conclude the rescue doctrine to be inapplicable. This doctrine was intended to encourage the rescue of others from peril and immediate danger by insulating the rescuer from contributory negligence claims, and by holding the tortfeasor liable for any injury to the rescuer on the grounds a rescue attempt is foreseeable. The underlying premise recognizes the need to bring an endangered person to safety. Here, however, plaintiff voluntarily

MENARD v. JOHNSON

[105 N.C. App. 70 (1992)]

and purposefully chose to leave a place of safety for the purpose of entering the house to extricate belongings. We do not construe the rescue doctrine to encompass a rescue of property under all situations, especially in such a case where the danger to the property had passed, the fire was being brought under control, and plaintiff had already attained a level of safety. To hold otherwise would be to shield an injured plaintiff from the general principles of negligence, where plaintiff intentionally placed his or her own life at risk in order to retrieve property. Consequently, we decline to extend the rescue doctrine to the retrieving of personal property under the facts in this case.

Affirmed.

Judges WELLS and LEWIS concur.